UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------- x
STEPHANIE CONDADO,                                :
                                                  :
                              Plaintiff,          :
                                                  :          REPORT AND
           -against-                              :          RECOMMENDATION
                                                  :
P&C PAGELS, INC., doing business as P&C           :          22-CV-01589 (NRM)(PK)
BAGELS, and PAUL ABATANGELO and                   :
LINDA ABANTANGELO, as individuals.                :
                                                  :
                                                  :
                              Defendants.         :
--------------------------------------------------------- x


**Peggy Kuo, United States Magistrate Judge:**

  Stephanie Condado ("Plaintiff") brought this action against P&C Pagels, Inc., doing business as P&C Bagels ("P&C"), Paul Abatangelo, and Linda Abatangelo [1] (collectively, "Individual Defendants" and together with P&C, "Defendants") for violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). (*See* "Compl.," Dkt. 1.) Plaintiff has moved for default judgment against Defendants. ("Motion," Dkt. 27.)

  The Honorable Nina R. Morrison referred the Motion to me for a report and recommendation. For the reasons stated herein, I respectfully recommend that the Motion be granted.

**FACTUAL AND PROCEDURAL BACKGROUND**

**I. Factual Background**

  The following facts are taken from the Complaint (Dkt. 1), the Declaration of Stephanie Condado ("Condado Decl.," Dkt. 28), the Declaration of Michael Taubenfeld ("Taubenfeld Decl.," Dkt. 29), and Plaintiff's testimony at the June 30, 2023 Inquest ("Inquest Tr.," Dkt. 43) and are

---

[1] The caption to the Complaint incorrectly spells Linda Abatangelo's name as "Linda Abantangelo." (June 30, 2023 Inquest Tr. 33:9-22, Dkt. 42.)

accepted as true for purposes of the Motion. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (in light of defendant's default, a court is required to accept all of plaintiff's factual allegations as true and draw all reasonable inferences in plaintiff's favor).

### A.    Defendants

P&C is a bagel shop and deli operating in New York City.  (Compl. ¶¶ 3, 9.)  P&C is a business or enterprise engaged in interstate commerce employing more than two employees and earning gross annual sales over $500,000.  (Compl. ¶ 4.)

Paul Abatangelo owns P&C, and Linda Abatangelo manages it.  (Condado Decl. ¶ 3.) Individual Defendants worked at the bagel shop and had the authority to hire and fire employees, supervise employees' work schedules, set employees' rates of pay, and maintain payroll records. (Compl. ¶¶ 6-7, 10-16.)

### B.    Plaintiff's Allegations

Plaintiff worked as a cashier and café worker at P&C from December 28, 2019 until April 11, 2021.  (Compl. ¶ 24; Condado Decl. ¶ 8.)  Her responsibilities included serving customers sandwiches and coffee, operating the cash register, and cleaning.  (*Id.* ¶ 9.)

Paul Abatangelo went to P&C each day and instructed Plaintiff on what work to perform.  (*Id.* ¶ 6.)  Linda Abatangelo hired and fired Plaintiff and set her schedule and hours each week.  (*Id.* ¶ 10.) The Individual Defendants set Plaintiff's rate of pay.  (*Id.* ¶ 12.)

During Plaintiff's employment with Defendants, Defendants failed to provide Plaintiff with paystubs recording the regular and overtime hours that she worked, and they did not give her a wage notice detailing her rate of pay at the beginning of her employment.  (Compl. ¶¶ 33-36.)

During Plaintiff's first two weeks of employment, she worked seven days per week from 6:30 or 7:00 a.m. until 3:00 p.m.  (*Id.* ¶ 25; Condado Decl. ¶ 22.)  On "some days" she stayed later, until approximately 4:00 or 4:30 p.m.  (Inquest Tr. 5:7-19.)

After the first two weeks, Plaintiff was scheduled to work six days per week, from 7:00 a.m. until 3:00 p.m.  (Compl. ¶ 26; Condado Decl. ¶ 23; Inquest Tr. 6:20-22.)  However, Defendants rarely followed the schedules they made for their employees.  (Condado Decl. ¶ 21; *see* Exhibit 1 to Condado Decl.; Inquest Tr. 8:13-18.)  Plaintiff sometimes worked five days per week, or a different schedule per day.  (Condado Decl. ¶ 23.)  Plaintiff stayed late "almost every day," usually until approximately 4:00 or 4:30 p.m.  (Inquest Tr. 6:24-7:2.)  Plaintiff estimates that she generally worked 45 hours each week during this time.  (Condado Decl. ¶ 23; Inquest Tr. 10:15-17.)

During the first three weeks of her employment, Plaintiff was paid at a rate of $11.00 per hour. (Compl. ¶ 27; Condado Decl. ¶ 13.)  Defendants subsequently raised her wage to $12.00 per hour. (Compl. ¶ 28; Condado Decl. ¶ 14.)  On or around February 15, 2020, Defendants raised Plaintiff's wage to $13.00 per hour.  (Compl. ¶ 28; Condado Decl. ¶ 15.)

In or around October 2020, Plaintiff complained to Linda Abatangelo that Defendants were not paying her the correct amount per hour or providing her with overtime pay.  (Compl. ¶ 38; Condado Decl. ¶ 29.)  Plaintiff additionally complained that Defendants "did not put[] [her] on the books" for her to complete her taxes.  (Inquest Tr. 29:15-23.)  After Plaintiff made these complaints, Defendants reduced her scheduled work hours from 40 to 20 hours per week.  (Compl. ¶ 41; Inquest Tr. 29:4-10.)  Linda Abatangelo stated to Plaintiff that Defendants did not have to pay her more than $13 an hour because they did not employ more than 10 employees.  (Compl. ¶ 39; Condado Decl. ¶ 32; Inquest Tr. 31:9-11.)

In or around January 2021, Plaintiff complained again to Defendants about Defendants' pay practices, including Defendants' failure to pay her minimum wage.  (Inquest Tr. 31:9-11.)  That same month, Plaintiff's rate of pay was reduced to $12.00 per hour.  (Condado Decl. ¶ 16; Inquest Tr. 26:22-27-2.)

3

In or around late March 2021, Plaintiff complained again to Defendants about Defendants' pay practices. (Compl. ¶ 42; Condado Decl. ¶ 36.) On April 11, 2021, Defendants terminated Plaintiff's employment. (Compl. ¶¶ 24, 43; Condado Decl. ¶ 37.)

Plaintiff states that as a result of her termination, she suffered from anxiety, depression, substantial financial stress, loss of appetite, loss of pleasure, excessive worry, low energy, hopelessness, sleep disturbance, and a lack of motivation. (Condado Decl. ¶ 39; Inquest Tr. 12:11-13:20.) Plaintiff became anxious about paying rent and other bills. (Condado Decl. ¶ 40.) She needed to ask her mother for money to pay her bills, including rent and groceries, and had to give up her apartment and move back in with her mother. (*Id.*) Plaintiff also suffered from insomnia and anxiety attacks because of the financial difficulties caused by her termination. (*Id.* ¶ 41.) Plaintiff did not find new work until March 2022, and as of February 13, 2023, she had earned $19,978.17 with her new employer. (*Id.* ¶ 43.)

At P&C, customers left tips in a tip jar. (*Id.* ¶ 27; Inquest Tr. 11:13-14.) Defendants required Plaintiff to share the tips she received with whomever else she was working with that day, including Linda Abatangelo, who worked approximately six days per week. (Condado Decl. ¶¶ 27-28.)

## II.    Procedural Background

Plaintiff brought this action on March 23, 2022. The Complaint asserts causes of action for failure to pay overtime wages under the FLSA in violation of 29 U.S.C. §§ 201 *et seq.* (Compl. ¶¶ 44-47), failure to pay minimum and overtime wages in violation of NYLL §§ 650 *et seq.* (*id.* ¶¶ 48-55), failure to provide a proper annual wage notice and wage statements in violation of NYLL § 195 (*id.* ¶¶ 56-60), unlawful misappropriation of tips in violation of NYLL § 196-d (*id.* ¶¶ 61-64), unlawful retaliation in violation of NYLL §§ 215 *et seq.* (*id.* ¶¶ 65-68), and unlawful retaliation under the FLSA in violation of 29 U.S.C. §§ 215 *et seq.* (*id.* ¶¶ 69-72).

Plaintiff effectuated service on the Corporate Defendant on April 4, 2022 and on Individual

Defendants on May 10, 2022. (Dkt. 10, 11, 12.)

Defendants did not answer or otherwise respond to the Complaint. The Court scheduled a status conference by telephone for August 5, 2022 and mailed Defendants a copy of the scheduling order. (Dkt. 14.) Defendants did not appear at that status conference. (Dkt. 15.) Plaintiff's counsel stated that Defendant Linda Abatangelo had called him the week prior and left a message stating that she did not know who Plaintiff is and that P&C would be shutting down. (*Id.*) Plaintiff's counsel returned the call but received no response. (*Id.*)

The Court ordered Defendants to appear and show cause why they should not be found in default for failing to appear. (*Id.*) Copies of the order to show cause were mailed to Defendants by the Court and by Plaintiff. (Dkt. 16.) Defendants did not appear at the show cause hearing. (Minute Order dated Aug. 22, 2022.) Counsel for Plaintiff attempted to call Defendant Linda Abatangelo during the hearing. (*Id.*) She did not answer, and Plaintiff's counsel left a voice message. (*Id.*)

On September 22, 2022, Plaintiff's counsel spoke to Linda Abatangelo on the phone and encouraged her to contact the Court's Pro Se Office. (Status Report dated Oct. 7, 2022, Dkt. 18.)

On December 14, 2022, Plaintiff requested a certificate of default against Defendants (Dkt. 19), which the Clerk entered on December 19, 2022. (Dkt. 21.)

Plaintiff filed the Motion on February 15, 2023. (Dkt. 27.) The Court held an Inquest by telephone on June 30, 2023 at which Plaintiff testified.

## DISCUSSION

### I.    Default Judgment Standard

Rule 55 of the Federal Rules of Civil Procedure prescribes a two-step process for entry of a default judgment. First, when a defendant "has failed to plead or otherwise defend," the Clerk of Court enters the defendant's default. Fed. R. Civ. P. 55(a). The plaintiff may then move the court for an entry of default judgment. Fed. R. Civ. P. 55(b)(2). "[J]ust because a party is in default, the plaintiff

is not entitled to a default judgment as a matter of right." *GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010). A plaintiff must take several steps before the court will grant default judgment. The plaintiff must demonstrate proper service of the summons and complaint. *See Advanced Capital Commercial Group, Inc. v. Suarez*, No. 09-CV-5558 (DRH)(GRB), 2013 WL 5329254, at *2 (E.D.N.Y. Sept. 20, 2013). The court "may first assure itself that it has personal jurisdiction over the defendant." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011) (internal quotations omitted). The plaintiff must establish compliance with the procedural requirements of Local Civ. Rules 7.1 and 55.2.

The court must also determine whether the plaintiff's "allegations establish [the defendant's] liability as a matter of law." *Finkel*, 577 F.3d at 84. "[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). In considering a motion for default judgment, a court accepts a plaintiff's "factual allegations as true and draw[s] all reasonable inferences in [the plaintiff's] favor." *Finkel*, 577 F.3d at 84. However, a default is "not considered an admission of damages." *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158. "The plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc. v. Benitez*, No. 18-CV-06476 (ARR)(PK), 2020 WL 5519200, at *3 (E.D.N.Y. Aug. 27, 2020), *R&R adopted*, 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020). District courts may also, in their discretion, hold a hearing to assess the amount of damages that should be awarded on a default. *See* Fed. R. Civ. P. 55(b)(2); *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989).

In the context of a motion for default judgment on FLSA and NYLL claims, "the plaintiff's recollection and estimates of hours worked are presumed to be correct." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012); *see also Santillan v. Henao*, 822 F. Supp. 2d 284, 294 (E.D.N.Y. 2011) ("[I]n the absence of rebuttal by defendants, or where the employer has defaulted, as here, the

employee's recollection and estimates of hours worked are presumed to be correct" (quotations, citations, and alterations omitted)).

A court "possesses significant discretion" in granting a motion for default judgment, "including [determining] whether the grounds for default are clearly established…." *Klideris v. Trattoria El Greco*, No. 10-CV-4288 (JBW)(CLP), 2011 WL 7114003, at *2 (E.D.N.Y. Sept. 23, 2011), *R&R adopted*, 2012 WL 273078 (E.D.N.Y. Jan. 30, 2012).

## II. <u>Jurisdiction</u>

### A. *Subject Matter Jurisdiction*

The Court has original jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

### B. *Service on the Defendants*

Plaintiff served P&C by delivering a copy of the Summons and Complaint to the New York Secretary of State. (Dkt. 10.) This constitutes proper service. *See* N.Y. Bus. Corp. L. § 306(b)(1); Fed R. Civ. P. 4(h)(1)(B).

Plaintiff also properly served Linda Abatangelo personally at her actual place of business and properly served Paul Abatangelo by leaving a copy of the Summons and Complaint at his actual place of business with Linda Abatangelo and sending a copy to his place of business via mail thereafter. N.Y. C.P.L.R. § 308(2); Fed. R. Civ. P. 4(e). (Dkt. 10, 11, 12, 13.)

### C. *Personal Jurisdiction*

"[S]erving a summons … establishes personal jurisdiction over a defendant … who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (quoting Fed. R. Civ. P. 4(k)(1)(A).)

New York has general jurisdiction over corporations formed under its laws and operating

within the state. *See Francis v. Ideal Masonry, Inc.*, No. 16-CV-2839 (NGG)(PK), 2018 WL 4292171, at *3 (E.D.N.Y. Aug. 3, 2018), *R&R adopted*, 2018 WL 4288625 (E.D.N.Y. Sept. 7, 2018). Because P&C is a New York corporation and was properly served with the Summons and Complaint, the Court has personal jurisdiction over it.

New York has specific jurisdiction over individuals who "transact[] any business within the state" so long as "the cause of action arises from that transaction." *Francis*, 2018 WL 4292171 at *3 (quoting *Licci ex rel. Licci*, 673 F.3d at 60). Individual Defendants owned and operated P&C and supervised Plaintiff in New York. (Compl. ¶¶ 9-16.) The Court, therefore, has personal jurisdiction over Individual Defendants.

## III.   Procedural Compliance with Local Civil Rules 7.1 and 55.2

Plaintiff filed the following in support of the Motion: Notice of Motion (Dkt. 27); a memorandum of law in support of the Motion (Dkt. 30); a copy of the certificate of default against Defendants (Dkt. 29-2); a copy of the Complaint (Dkt. 29-1); a proposed default judgment order (Dkt. 29-6); and proof of mailing the Motion papers to Defendants. (Dkt. 42-1.) Plaintiff has also affirmed that Individual Defendants are not infants, in the military, or incompetent persons. (Dkt. 42-2.) Thus, compliance with the Local Civil Rules is satisfied.

## IV.   Liability under the FLSA and NYLL

### A.   Statute of Limitations

The FLSA statute of limitations is two years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). "When a defendant defaults, the violation is considered 'willful', and the three-year statute of limitations applies." *Rodriguez v. Queens Convenience Deli Corp.*, No. 09-CV-1089 (KAM)(SMG), 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011) (citing *Blue v. Finest Guard Servs., Inc.*, No. 09-CV-133 (ARR), 2010 WL 2927398 (E.D.N.Y. June 24, 2010)). "The statute of limitations starts to run when

the employee begins to work for the employer." *Id.* (citation omitted). Under the NYLL, the statute of limitations is six years. *See* NYLL §§ 198(3), 663(3).

Plaintiff commenced this action on March 23, 2022. Because Defendants have defaulted, the violations are willful and the three-year FLSA statute of limitation applies. Plaintiff can recover under the FLSA for any claims that accrued starting on March 23, 2019. Under the six-year NYLL statute of limitations, Plaintiff may recover for any claims that accrued starting on March 23, 2016.

## B.    *Employment Relationship Under the FLSA*

The FLSA is to be "construed … liberally" because its "broad coverage is essential to accomplish the goal of outlawing from interstate commerce goods produced under conditions that fall below minimum standards of decency." *Tony & Susan Alamo Found. V. Sec'y of Labor*, 471 U.S. 290, 296 (1985) (quotation and citations omitted). To plead a cause of action under the FLSA, a plaintiff must establish that: (1) defendants are employers subject to the FLSA; (2) plaintiff is an employee within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA. *See Rowe v. CC Rest. & Bakery, Inc.,* No. 17-cv-01423 (CBA)(PK), 2019 WL 4395158, at *4 (E.D.N.Y. Aug. 15, 2019), *R&R adopted*, 2019 WL 4393987 (E.D.N.Y. Sept. 13, 2019). Courts in the Second Circuit have "treated employment for FLSA purposes as a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." *Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 141-42 (2d Cir. 2008).

### 1.    Whether Defendants are Employers

The FLSA broadly describes an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and does not define the term "'employer' in the first instance." *Irizarry v. Catsimatidis*, 722 F.3d 99, 103 (2d Cir. 2013). "[E]mployment for FLSA purposes [is] a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." *Id.* at 104 (quoting *Barfield v. New York City Health &*

*Hosps. Corp.*, 537 F.3d 132, 142 (2d Cir. 2008)).  "[A]n employee may be jointly employed by two or more employers," and "[i]n such cases, joint employers are subject to joint and several liability for FLSA violations."  *Michalow v. E. Coast Restoration & Consulting Corp.*, No. 09-CV-5475 (SLT)(RML), 2017 WL 9400690, at *4 (E.D.N.Y. July 11, 2017), *R&R adopted*, 2018 WL 1559762 (E.D.N.Y. Mar. 31, 2018).

A defendant is an employer under the FLSA if it meets the criteria for either enterprise or individual coverage.  *See Rowe*, 2019 WL 4395158, at *4.  The individual coverage test considers the "employment actions of each" plaintiff to determine whether "the employees themselves are 'engaged in commerce.'"  *Id.*  Even if the plaintiffs are not themselves engaged in commerce, a defendant may meet the enterprise coverage test if the defendant has employees engaged in commerce or in the production of goods for commerce, "or … has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and ... whose annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(i-ii); *see also Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015).  "Commerce" is "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof."  29 U.S.C. § 203(b).  Even local activities may meet this test if "an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce."  *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 121 (E.D.N.Y. 2011) (quoting *Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 530 (S.D.N.Y. 1998)).

Plaintiff alleges that P&C had at least $500,000 in annual revenue and that Defendants are employers engaged in interstate commerce and/or in the production of goods for interstate commerce.  (Compl. ¶¶ 4-7.)  Although these allegations merely repeat the statutory elements, they are sufficient to establish that Defendants were required to comply with FLSA's minimum wage and overtime requirements.  Because Plaintiff was engaged in, among other tasks, food service work, it is

reasonable to infer that she handled tools and materials that were moved via interstate commerce. *See Galicia v. 63-68 Diner Corp.*, No. 13-CV-3689 (PKC), 2015 WL 1469279, at *2 (E.D.N.Y. Mar. 30, 2015) (inferring that a diner's busboy "handle[d] goods or materials that have moved in interstate commerce"); *see also Rocha v. Bakhter Afghan Hall Kababs, Inc.*, 44 F. Supp. 3d 337, 346 (E.D.N.Y 2014) (collecting cases).

With respect to whether an individual is an employer for FLSA purposes, "[t]he underlying inquiry in determining 'employer' status is whether the individual possessed operational control over employees …." *Tapia v. BLCH 3rd Ave. LLC*, 906 F.3d 58, 61 (2d Cir. 2018) (per curiam). "[T]o be an 'employer,' an individual defendant must possess control over a company's actual 'operations' in a manner that relates to a plaintiff's employment." *Irizarry*, 722 F.3d at 109. "A person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment." *Id.* at 110. The analysis of whether an individual is an "employer" is also guided by the 'economic realities' test set forth in *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8 (2d Cir. 1984). *Id.* at 104-05. The factors that the Court may consider include "'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Carter*, 735 F.2d at 12 (quoting *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983)). However, "[t]he 'economic reality' test encompasses the totality of circumstances, no one of which is exclusive." *Irizarry*, 722 F.3d at 106 (quoting *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999)).

The FLSA "does not require continuous monitoring of employees, looking over their shoulders at all times, or any sort of absolute control of one's employees. Control may be restricted, or exercised only occasionally, without removing the employment relationship from the protections

of the FLSA, since such limitations on control 'do not diminish the significance of its existence.'" *Id.* (quoting *Donovan v. Janitorial Servs., Inc.*, 672 F.2d 528, 531 (5th Cir. 1982) (alteration omitted)).

Plaintiff alleges that Individual Defendants hired and fired employees, supervised their work schedules, set their rates of pay, and maintained payroll records. (Compl. ¶¶ 10-16.) Because these allegations closely track the *Carter* factors, they establish that Individual Defendants were Plaintiff's employers.

### 2. Whether Plaintiff was an Employee

An "employee" under the FLSA is likewise broadly defined as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). Plaintiff was employed by Defendants from 2019 through 2021. (Compl. ¶ 24.) Such allegation establishes that Plaintiff was an employee under the FLSA.

### 3. Whether any FLSA exemption applies

Finally, I examine whether Plaintiff is exempt from the FLSA's protections. *See* 29 U.S.C. § 213. As a cashier and café worker, Plaintiff is not exempt from the FLSA's protections. *See generally Fermin*, 93 F. Supp. 3d at 32 (explaining that jobs such as "waiter, kitchen helper/food preparer, cook and dishwasher all constitute non-exempt employment under the FLSA").

### C. *Employment Relationship Under the NYLL*

To prevail on a NYLL claim, Plaintiff must establish that her employment relationship with Defendants falls within the NYLL, which applies to "any person employed for hire by an employer in any employment." NYLL § 190. "Unlike the FLSA, the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law." *Garcia v. Badyna*, No. 13-CV-4021 (RRM)(CLP), 2014 WL 4728287, at *6 (E.D.N.Y. Sept. 23, 2014). Otherwise, the NYLL's definition of "employer" is "nearly identical" to that of the FLSA, and the analysis of the employment relationship under both statutes is based on the same factors. *See Mahoney v. Amekk Corp.*, No. 14-CV-4131 (ENV)(VMS), 2016 WL 6585810, at *9 (E.D.N.Y. Sept. 30, 2016),

*R&R adopted*, 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016) (collecting cases holding that the FLSA and NYLL are interpreted consistently with one another on the question of employer status).

As the NYLL and FLSA definitions of "employer" are coextensive, *see Fermin*, 93 F. Supp. 3d at 37, Defendants are Plaintiff's employers within the meaning of the NYLL, and the NYLL applies to the instant dispute.

### D.    Minimum Wage Claim

Under both the FLSA and the NYLL, employees must be paid at least the minimum hourly wage for each hour that they work. 29 U.S.C. § 206; NYLL § 652. "The federal minimum wage does not preempt the state minimum wage, and a plaintiff may recover under whatever statute provides the highest measure of damages." *Wicaksono v. XYZ 48 Corp.*, No. 10-CV-3635 (LAK)(JCF), 2011 WL 2022644, at *3 (S.D.N.Y. May 2, 2011) (citations omitted), *R&R adopted*, 2011 WL 2038973 (S.D.N.Y. May 24, 2011); *see also* 29 U.S.C. § 218(a) ("No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter . . .").

Plaintiff alleges that she was paid less than the minimum wage under the NYLL. (Compl. ¶¶ 52-55.) The minimum wage for New York City businesses with ten or fewer employees has been $15.00 per hour since December 31, 2019. NYLL § 652(1)(a)(ii). Linda Abatangelo represented to Plaintiff that Defendants did not employ more than ten employees. (Compl. ¶ 39; Condado Decl. ¶ 32.)

Plaintiff alleges that her rate of pay between January 5, 2020 and April 11, 2021 was $11.00, $12.00, or $13.00 per hour.[2] (*See* Compl. ¶¶ 27-28; Condado Decl. ¶¶ 13-16; "Condado Damages Calculations," Ex. 5 to Taubenfeld Decl., Dkt. 29-3.) These hourly rates are all below the New York

---

[2] Although Plaintiff alleges that she started working for Defendants on December 28, 2019, she does not seek damages for minimum wage violations prior to January 5, 2020. (*See* Inquest Tr. 23:3-8; Condado Damages Calculations.)

minimum wage of $15.00.  Because Plaintiff was paid less than the New York minimum wage, she has established Defendants' liability for failure to pay minimum wages under the NYLL for that time period.

###### E.    Overtime Claims

Under both the FLSA and the NYLL, an employee must "be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week." *Nakahata v. New York-Presbyterian Health Care Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (citing 29 U.S.C. § 207(a)); *see also* NYLL §§ 650 *et seq.*; 12 N.Y.C.R.R. § 142-2.2).  To support "a reasonable inference" that he or she worked more than forty hours in a given week, *Nakahata*, 723 F.3d at 201, a plaintiff must sufficiently allege some uncompensated time in excess of the 40 hours of work in a given workweek, *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013), and provide "sufficient detail about the length and frequency" of the unpaid work.  *Nakahata*, 723 F.3d at 201; *see also Fermin*, 93 F. Supp. 3d at 44-45 (finding allegations that plaintiff worked over forty hours a week established an overtime claim).

Plaintiff alleges that during her employment, she worked 56 hours per week for the first two weeks and then routinely worked approximately 45 hours per week until about October 2020.  (Compl. ¶¶ 25, 29; Condado Decl. ¶¶ 22-24.)  Throughout this period, Defendants paid Plaintiff her regular rate for all her hours but not the overtime premium for her overtime hours.  (Compl. ¶¶ 29-30; Condado Decl. ¶¶ 12-17, 21-26.)  These allegations establish Defendant's liability for failure to pay Plaintiff overtime under both the FLSA and the NYLL during this time period.  *See Newman v. W. Bar & Lounge, Inc.*, No. 20-CV-1141 (KAM)(RER), 2021 WL 2401176, at *7 (E.D.N.Y. June 11, 2021) (plaintiff's sworn statement estimating his schedule and pay established he worked over 40 hours a week without time-and-a-half compensation, subjecting defendants to liability on default).

### F.      Wage Notice and Wage Statement Claims

Plaintiff alleges violations of NYLL §§ 195(1) and 195(3), the statute's wage notice and statement provisions. (Compl. ¶¶ 56-60.) Section 195(1)(a) requires employers to provide employees at the time of hire with a wage notice containing, *inter alia,* the rate of pay, the basis thereof, and pay schedule. Section 195(3) requires employers to provide employees with "a statement with every payment of wages," listing various information including the dates of work covered by the payment, information identifying the employer and employee, details regarding the rate of pay and the overtime rate of pay, and the number of hours worked.

Plaintiff did not receive any wage notice at the time of hire and also did not receive proper wage statements with each payment of wages. (*Id.* ¶¶ 33, 35.) Therefore, Plaintiff's allegations establish liability for violations of NYLL §§ 195(1)(a) and 195(3).

### G.      Unlawful Misappropriation of Tips Claims

Under the NYLL, an employee may bring a claim for illegally retained tips. NYLL § 196-d; *see also Azeez v. Ramaiah*, No, 14 Civ. 5623 (PAE), 2015 WL 1637871 (S.D.N.Y. 2015). Section 196-d of the NYLL provides that "[n]o employer ... shall ... retain any part of a gratuity or of any charge purported to be a gratuity for an employee." NYLL § 196-d. This provision applies to managers and employees with "meaningful or significant authority or control over subordinates" who are ineligible to share in tips. *Salinas v. Starjem Restaurant Corp.*, 2015, 123 F. Supp.3d 442 (quoting *Barenboim v. Starbucks Corp.*, 21 N.Y.3d 460, 473, 972 N.Y.S.2d 191, 995 N.E.2d 153 (2013)). Indicators of meaningful or significant authority include (1) the ability to discipline subordinates; (2) the ability to assist in performance evaluations; (3) the ability to participate in the process of hiring or terminating employees; and (4) having input in the creation of employee work schedules. *Id.*

Plaintiff alleges that Linda Abatangelo regularly took cash tips from the tip pool and divided them between herself and other employees, including Plaintiff. (Condado Decl. ¶ 27.) Although

Linda Abatangelo worked shifts, she was a manager of the Corporate Defendant, who possessed the authority to hire and fire employees, supervise their work schedules, set their rates of pay, and maintain payroll records. (Compl. ¶¶ 8, 10.) Because Linda Abatangelo had the ability to discipline, hire, and terminate employees, as well as create the employees' schedules, pursuant to the *Barenboim* test, she had meaningful authority over subordinates and was not eligible to take a portion of the tips. Plaintiff has thus established Defendants' liability for misappropriation of tips under of NYLL § 196-d.

### H.    Retaliation Claims

The FLSA states that it is unlawful for an employer "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter..." 29 U.S.C. § 215(a)(3). Similarly, the NYLL states that "[n]o employer ... shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee (i) because such employee has made a complaint to his or her employer ... that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter." NYLL § 215(1)(a). To establish a *prima facie* claim for retaliation under the FLSA and the NYLL, a plaintiff must demonstrate three factors: (1) participation in protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action. *Mullins v. City of New York*, 626 F.3d 53, 53 (2d Cir. 2010); *see also Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 472 (S.D.N.Y. 2013) (applying the same standard for anti-retaliation claims brought under FLSA and NYLL); *Azeez v. Ramaiah*, No. 14 Civ. 5623 PAE, 2015 WL 1637871, at *8 (S.D.N.Y. Apr. 9, 2015) (describing FLSA's anti-retaliation provision and NYLL's anti-retaliation provision as "closely analogous").

To satisfy the first prong of the test for a FLSA retaliation claim, "a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and

context, as an assertion of rights protected by the statute and a call for their protection." *Kasten v. Saint–Gobain Performance Plastics Corp.*, 563 U.S. 1, 131 S. Ct. 1325, 1335, 179 L.Ed.2d 379 (2011). Similarly, under the NYLL, Plaintiffs must show that they "complained about a specific violation of the Labor Law." *Castagna v. Luceno*, No. 09 Civ. 9332(CS), 2011 WL 1584593, at *12 (S.D.N.Y. Apr. 26, 2011). An employee need not cite a specific statute, but her "complaint to the employer [must] be of a colorable violation of the statute." *Castagna*, 2011 WL 1584593, at *12; *see also Patel v. Baluchi's Indian Rest.*, No. 08 Civ. 9985(RJS), 2009 WL 2358620, at *11 (S.D.N.Y. July 30, 2009) (finding that the plaintiffs had successfully satisfied the first prong of the test after complaining to their employer of "substandard and unsafe working conditions, low wages, and lack of benefits").

As for the second and third prong, an employment action disadvantaging an employee is one that "might have 'dissuaded a reasonable worker from making or supporting [similar] charge[s].'" *Mullins*, 626 F.3d at 53 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)). A causal connection between the protected activity and the adverse employment action can be established "through evidence of retaliatory animus directed against a plaintiff by the defendant," *Johnson v. Palma*, 931 F.2d 203, 207 (2d Cir. 1991), or "by showing that the protected activity was closely followed in time by the adverse action," *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988).

All three factors are satisfied here. By complaining to Defendant Linda Abatangelo about Defendants' failure to pay minimum wage and overtime, as well as the misappropriation of tips, Plaintiff engaged in a protected activity known to Defendants. Although Plaintiff did not cite the NYLL specifically, she was not required to do so. Following Plaintiff's initial complaints to Defendants in October 2020, Defendants reduced her scheduled hours. (Compl. ¶¶ 38-42.) Following a further complaint by Plaintiff in January 2021, Defendants reduced her hourly wage. (Inquest Tr. ¶¶ 26:18-25.) Finally, Defendants terminated Plaintiff's employment in April 2021 following her

complaint about Defendants' pay practices in late March 2021.  (Compl. ¶¶ 42-43.)  Defendants' actions represent adverse employment decisions that might dissuade other workers from making similar complaints.  *See Santi v. Hot in Here, Inc.*, 2019 Wl 290145 (S.D.N.Y. Jan. 22 2019) (finding that employment actions that would impose possible financial burdens might well dissuade another worker from bringing similar complaints against the employers); *see also Lahcen v. Kiran Park Newsstand Inc.*, No. 11-CV-5998 (VB), 2014 WL 3887222, at *6 (S.D.N.Y. Aug. 7, 2014) (finding that plaintiff had met his burden on his FLSA and NYLL claims where plaintiff alleged that defaulting defendants rearranged his schedule, reduced his hours, and ultimately terminated his employment following protected activity).

Finally, each protected activity was closely followed in time by the adverse actions, and the causal connection prong is established.  *See Davis v. State University of New York*, 802 F.2d 638, 642 (2d Cir. 1986) (finding that a one-month gap between a protected complaint of racial discrimination and adverse actions by the employer is sufficient to satisfy the third prong test for a *prima facie* claim of retaliation).  Plaintiff has thus established Defendants' liability for prohibited retaliation under the FLSA and the NYLL.

## V.  Damages

### A.  *Minimum Wage Damages*

Plaintiff is entitled to recovery based on the New York minimum wage.  Plaintiff's minimum wage damages are calculated by taking the difference between Plaintiff's regular hourly rate of pay and the minimum wage—which was $15.00 per hour throughout Plaintiff's employment with Defendants—multiplied by the number of hours worked per week.

| Time Period | Number of Weeks | Hours Worked Per Week | Regular Hourly Wage | Difference Between Regular Hourly Wage and Minimum Wage | Weekly Underpayments | Total Underpayments for Period |
|---|---|---|---|---|---|---|
| 1/5/2020 -1/11/2020[3] | 1 | 56 | $11 | $4 | $224 | $224.00 |
| 1/12/2020 -1/18/2020 | 1 | 45 | $11 | $4 | $180 | $180.00 |
| 1/19/2020 – 2/15/2020 | 4 | 45 | $12 | $3 | $135 | $540.00 |
| 2/16/2020 – 9/30/2020 | 32.57 | 45 | $13 | $2 | $90 | $2,931.30 |
| 10/1/2020 – 1/10/2021 | 14.57 | 20 | $13 | $2 | $40 | $582.80 |
| 1/11/2021 – 4/11/2021 | 13 | 20 | $12 | $3 | $60 | $780.00 |
| | | | | | **Total:** | **$5,238.10** |

Accordingly, I respectfully recommend that Plaintiff be awarded **$5,238.10** in minimum wage damages under the NYLL.

### B.    Overtime Damages

Plaintiff is also entitled to an overtime premium for all hours worked over 40 per week at 1.5 times the greater of her regular rate of pay or the minimum wage under both the NYLL and the FLSA. *See, e.g., Perez Campos v. Quentin Mkt. Corp.*, No. 16-CV-05303, 2018 WL 9945754, at *4, *8 (E.D.N.Y. Oct. 17, 2018). Because Plaintiff received less than the New York minimum wage of $15.00 throughout her employment, her overtime wages are calculated using the minimum wage of $15.00 per hour. The following table shows Plaintiff's overtime damages for each period of employment in which she worked in excess of 40 hours per week:

---

[3] Although Plaintiff stated that she worked approximately eight hours a day, seven days a week, for the first two weeks of her employment starting on December 28, 2019, she only requests damages starting on January 5, 2020. (*See* Inquest Tr. 23:3-8; Condado Damages Calculations.)

| Time Period | Hours Per Week | Number of Weeks | Overtime Hours per Week | Overtime Premium (0.5 x the minimum wage) | Weekly Overtime Underpayments Owed (Overtime Rate x Overtime Hours) | Total Overtime Underpayments (Number of Weeks x Weekly Overtime Underpayment) |
|---|---|---|---|---|---|---|
| 1/5/2020 - 1/11/2020 | 56 | 1 | 16 | $7.50 | $120.00 | $120.00 |
| 1/12/2020 - 9/30/2020 | 45 | 37[4] | 5 | $7.50 | $37.50 | $1387.50 |
| | | | | | Total: | $1,507.50 |

Accordingly, I respectfully recommend that Plaintiff be awarded **$1,507.50** in unpaid overtime.

### C.    *Wage Notice and Wage Statement Damages*

Violations of NYLL § 195(1) carry damages of $50 per workday, for a maximum of $5,000, along with costs and attorneys' fees.  NYLL § 198(1-b).  Violations of NYLL § 195(3) carry damages of $250 per workday, for a maximum of $5,000, along with costs and attorneys' fees.  NYLL § 198(1-d).

Because Plaintiff never received a wage notice or wage statements from Defendants, and because Plaintiff worked for Defendants for more than 100 days, she is entitled to the maximum damages under both provisions.  *See, e.g.*, *Jianmin Jin v. Shanghai Original, Inc.*, No. 16-CV-5633 (ARR)(JO), 2019 WL 3244187, at *5 (E.D.N.Y. July 19, 2019) (awarding $5,000 under Section 195(3) because the plaintiff worked without receiving paystubs for more than 20 days).

Accordingly, I recommend Plaintiff be awarded **$5,000** in damages under Section 195(1) and **$5,000** in damages under Section 195(3).

### D.    *Misappropriation of Tips*

Plaintiff estimates that customers left approximately $50.00 to $60.00 in tips on weekdays, and between $130.00 and $160.00 in tips on weekends.  (Condado Decl. ¶ 28; Inquest Tr. 11:4-6.)  Because Plaintiff worked both weekend days, she estimates that the shop earned approximately $500 in tips for the days she worked each week before October 2020 when her hours were reduced.  (Condado

---

[4] This number reflects the number of full weeks Plaintiff worked during this time period; she would not have worked overtime hours during her partial 0.57 week.  (*See* Condado Damages Calculations.)

Decl. ¶ 28.)  Plaintiff estimates that on an average week, when she worked with Linda Abatangelo and one other employee, Linda Abatangelo took approximately one-third of the $500 in tips earned by the shop, or $166.67.  (*Id.*)

The tips misappropriated by Linda Abatangelo should have been distributed evenly between Plaintiff and the other employee working at the shop.  Accordingly, Plaintiff was entitled to half of the tips misappropriated by Linda Abatangelo when Plaintiff was working a full schedule, $83.33.  After Plaintiff's hours were reduced to 20 hours weekly, Plaintiff was entitled to half of that amount, $41.67.

The following table shows Plaintiff's misappropriation of tips damages.

| Time Period | Weekly Misappropriated Tips | Weeks | Total Misappropriated Tips |
|---|---|---|---|
| 1/5/2020 – 9/30/2020 | $83.33 | 38.57 | $3,214.09 |
| 10/1/2020 – 4/11/2021 | $41.67 | 27.57 | $1,148.84 |
| | | Total: | **$4,362.93** |

Accordingly, I respectfully recommend that Plaintiff be awarded **$4,362.93** in damages for misappropriation of tips.

### E.    *Liquidated Damages*

An employee may recover liquidated damages under either the FLSA or NYLL equal to the amount owed for unpaid minimum wage and overtime compensation.  29 U.S.C. § 216(b); NYLL § 198(1-a).  Damages for misappropriation of tips are also included in the calculation of Plaintiff's liquidated damages since Plaintiff is "entitled to liquidated damages for willful violations of NYLL § 196-d."  *Ayres v. 127 Restaurant Corp.*, 12 F. Supp.2d 305, 309 (S.D.N.Y. 1998).  If the employer shows that "the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of the FLSA or NYLL, a court may decide not to award liquidated damages.  29 U.S.C. § 260; *see* NYLL § 198(1-a) (granting same good-faith exception to liquidated damages).  Because Defendants did not respond to the Motion, there is

no showing of good faith, and liquidated damages are appropriate. *See Herrera v. Tri-State Kitchen & Bath, Inc.*, No. 14-CV-1695 (ARR)(MDG), 2015 WL 1529653, at *12 (E.D.N.Y. Mar. 31, 2015) (defaulting defendants did not show good faith).

Accordingly, I respectfully recommend that Plaintiff be awarded **$11,108.53** in liquidated damages under the NYLL.

## F.    Retaliation

Plaintiff seeks back pay, liquidated damages on back pay, as well as emotional distress damages for her retaliation claims against Defendants. (*See* Motion at 21.)

### 1.    Back Pay

Plaintiff may recover lost compensation under either the FLSA or NYLL for her retaliation claims from the date of her termination until the date of judgment. *Diaz v. KC Plumbing, LLC*, No. 19-CV-4321 (DLI)(CLP), 2021 WL 7500316, at *11 (E.D.N.Y. Mar. 1, 2021). When paid properly under New York law, Plaintiff's hourly rate is $15, and her overtime rate is $22.50. Plaintiff claims that on average, she worked 45 hours per week until October 2020, after which her scheduled hours were reduced to 20 per week following her complaints to Defendants regarding her pay. (Compl. ¶¶ 37-43; Condado Decl. ¶ 24.) Based on a 45-hour work week and hourly wage of $15.00, Plaintiff's weekly wages should have been $712.50. Defendants terminated Plaintiff on April 11, 2021, approximately 128 weeks ago. (Compl. ¶ 24.) Therefore, her total back pay to the date of this report and recommendation is approximately $91,200.

Plaintiff mitigated a portion of her damages by obtaining employment at H&M Clothing beginning in March 2022. (*Id.* ¶ 43.) She earned a total of $18,129 in 2022 and $1,849.17 in 2023. (*Id.*) Plaintiff has requested back pay less her mitigation amount of $19,978.17. (*See* Condado Damages Calculations.)

Accordingly, I respectfully recommend that Plaintiff be awarded back pay of **$71,221.83** for her retaliation claim under the NYLL, plus $712.50 per week from today until the date of entry of judgment.

### 2.     Liquidated Damages on Back Pay

The FLSA and NYLL permit liquidated damages on back pay for retaliation claims. Because Plaintiff has calculated her back pay based on the New York minimum wage, I apply the NYLL, which requires that liquidated damages be awarded but limits the amount to $20,000. *See* NYLL § 215(2)(a).

I respectfully recommend that Plaintiff be awarded $20,000 as liquidated damages under the NYLL for her retaliation claim. *See Brito v. Marina's Bakery Corp.*, No. 19-CV-00828 (KAM)(MMH), 2022 WL 875099, at *23 (E.D.N.Y. Mar. 24, 2022) (awarding plaintiff $20,000 as liquidated damages for plaintiff's retaliation claims under NYLL).

### 3.     Emotional Distress Damages

Courts in this Circuit have awarded additional damages to employees who demonstrate that they suffered emotional distress as the result of a retaliatory termination. *See Greathouse v. JHS Sec. Inc.*, No. 11-CV-7845(PAE), 2015 WL 7142850, at *4 (S.D.N.Y. Nov. 13, 2015), *R&R adopted*, No. 11-CV-7845(PAE)(GWG), 2016 WL 4523855 (S.D.N.Y. Aug. 29, 2016) (collecting cases). Plaintiff seeks $50,000 in damages for emotional distress. (*See* Condado Damages Calculations.) Plaintiff claims that she was "devastated" after her termination and began experiencing anxiety, depression, substantial financial stress, loss of appetite, loss of pleasure, excessive worry, low energy, hopelessness, sleep disturbance, and a lack of motivation. She claims that she felt "extremely hurt" by Defendants' actions because she risked infection by working during the pandemic. (Condado Decl. ¶¶ 38-42.) However, Plaintiff did not provide any medical testimony or evidence to illustrate the severity or consequences of her suffering; the evidence of her mental suffering is limited to her own testimony, and she dealt with her mental issues "on her own" without seeking any medical treatment. (Inquest Tr. 33:1-3.)

As a result, Plaintiff's testimony presents "garden variety" emotional distress, where the "evidence of mental anguish suffered is generally limited to the testimony of the plaintiff, is described in vague or conclusory terms, without presenting evidence of the duration, severity or consequences of the condition, and there is minimal or no evidence of medical treatment." *Greathouse*, No. 11-CV-7845, 2015 WL 7142850, at *4. Under these circumstances, an award of damages at the low end of the customary range is warranted. *See id.* (awarding $10,000 in emotional distress damages where plaintiff was threatened by his employer with a gun upon his request for pay); *Perry v. High Level Dev. Contracting & Sec. LLC*, No. 1:20-CV-02180(AMD)(PK), 2022 WL 1018791, at *13 (E.D.N.Y. Mar. 16, 2022), *R&R adopted*, No. 20-CV-2180(AMD)(PK), 2022 WL 1017753 (E.D.N.Y. Apr. 5, 2022) (recommending an award of $5,000 according to plaintiff's request for plaintiff's garden variety emotional distress under a NYLL retaliation claim).

Accordingly, I respectfully recommend that Plaintiff be awarded emotional distress damages of **$5,000** for her retaliation claim.

### G.    *Prejudgment Interest*

Plaintiff seeks prejudgment interest under the NYLL. Prejudgment interest is available for wage underpayments under the NYLL, which in this case includes the minimum wage, overtime, and misappropriation of tips claims. *See* NYLL § 198(1-a); *Fermin*, 93 F. Supp. 3d at 30 (calculating prejudgment interest based on unpaid minimum wages, overtime pay, spread-of-hours pay, and misappropriated tips). Plaintiff is also entitled to recover prejudgment interest on back pay for her NYLL retaliation claim. *See Brito*, 2022 WL 875099, at *22. Prejudgment interest is not available for wage statement or notice violations, or for liquidated damages. *Ying Ying Dai v. ABNS NY Inc.*, 490 F. Supp. 3d 645, 662 (E.D.N.Y. 2020).

In New York, prejudgment interest accrues at the statutory rate of nine percent per year. N.Y. C.P.L.R. § 5004. "Where damages were incurred at various times, interest shall be computed upon

each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." *Id.* § 5001(b). Courts have "wide discretion in determining a reasonable date from which to award pre-judgment interest." *Conway v. Icahn & Co.*, 16 F.3d 504, 512 (2d Cir. 1994). "Most courts in this district calculate simple prejudgment interest in NYLL actions from the midpoint date of the claims through the date judgment is entered." *Perez Campos*, 2018 WL 9945754, at *8 (citing *Fermin*, 93 F. Supp. 3d at 49.) Other courts have used the midpoint between the first and last dates of the plaintiff's NYLL claims. *See, e.g., Hernandez v. NJK Contractors, Inc.*, 09-CV-4812 (RER), 2015 WL 1966355, at *51 (E.D.N.Y. May 1, 2015).

As Plaintiff's minimum wage, overtime wage, and misappropriation of tips claims under the NYLL cover the period from January 5, 2020 to April 11, 2021, the midpoint—for purposes of calculating prejudgment interest of underpayments—is August 23, 2020. Plaintiff's combined minimum wage, overtime, and misappropriation of tips damages are $11,108.53. Prejudgment interest on those damages at a rate of nine percent per year is $999.77. That amount divided by 365 days in a year results in daily interest of $2.74. Accordingly, I respectfully recommend that Plaintiff recover prejudgment interest at a daily rate of $2.74 for the dates from August 23, 2020 through the entry of the judgment.

Plaintiff's termination occurred on April 11, 2021, and her retaliation back pay through today is $71,221.83. Prejudgment interests on those damages at a rate of nine percent per year is $6,409.96. That amount divided by 365 days in a year result in a daily interest of $17.56. I respectfully recommend that Plaintiff be granted pre-judgment interest on her retaliation claims to be calculated using a daily rate of $17.56 from April 11, 2021 through the date of judgment.

### H.    Post-Judgment Interest

Plaintiff also seeks post-judgment interest, which "shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a); *see, e.g., Fermin*, 93 F. Supp. 3d at 53.

Accordingly, I recommend that Plaintiff be granted post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.

## I.    Fifteen Percent Increase Penalty if Damages not Paid within Ninety Days

Plaintiff does not seek an automatic increase of fifteen percent for any unpaid amount of the judgment still pending after ninety days, as provided for at NYLL § 198(4). However, that provision mandates that "any judgment or court order awarding remedies under this section *shall provide* that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent." NYLL § 198(4) (emphasis added); *see also Rodriguez v. Solares Corp.,* No. 16-CV-3922 (CBA)(SMG), 2018 WL 7252949, at *12 (E.D.N.Y. Aug. 14, 2018), *R&R adopted,* 2019 WL 486883 (E.D.N.Y. Feb. 7, 2019). This award is therefore mandatory, regardless of whether Plaintiff requests it or not.

The increase applies only to damages awarded under state law. *See id.* (recommending that the fifteen-percent increase provided for under NYLL § 198(4) be limited to amounts "awarded exclusively under the NYLL"); *see also De la Cruz Casarrubias v. Surf Ave Wine & Liquor Inc.,* No. 20-CV-3003 (AMD), 2021 WL 2227977, at *13 (E.D.N.Y. May 11, 2021), *R&R adopted,* 2021 WL 2223275 (E.D.N.Y. June 2, 2021) (citing *Rodriguez* and limiting conditional fifteen percent enhancement to damages awarded under the NYLL). Accordingly, Plaintiff's damages under the NYLL should be increased by fifteen percent if Defendants fail to timely satisfy the judgment.

## VI.    <u>Attorneys' Fees and Costs</u>

Prevailing plaintiffs are allowed to recover reasonable attorneys' fees and costs under both the FLSA and the NYLL. *See* 29 U.S.C. § 216(b); NYLL § 663(1).

Plaintiff requests $2,762.50 in fees and costs. (Dkt. 27, ¶ 10.)

A.    *Attorneys' Fees*

District courts have broad discretion to determine the amount of attorneys' fees awarded, and the party requesting fees must submit documentation to support its request. *Mahoney v. Amekk Corp.*, No. 14-CV-4131 (ENV)(VMS), 2016 WL 6585810, at *18 (E.D.N.Y. Sept. 30, 2016), *R&R adopted*, 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016). Courts must "us[e] their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of each component of a fee award." *Century 21 Real Estate LLC v. Bercosa Corp.*, 666 F. Supp. 2d 274, 298 (E.D.N.Y. 2009) (quotation and citation omitted).

"[T]he lodestar method—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'" *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n. v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)). Courts determine what constitutes a reasonable hourly rate through application of "the forum rule," which states that "courts should generally use the hourly rates employed in the district in which the reviewing court sits." *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (quotations and citation omitted). "If the Court finds that some of the time [the attorney billed] was not reasonably necessary[,] it should reduce the time for which compensation is awarded accordingly." *Mister Softee, Inc. v. Konstantakakos*, No. 15-CV-4770 (SJ)(SMG), 2016 WL 11445964, at *6 (E.D.N.Y. June 27, 2016), *R&R adopted*, 2016 WL 4250314 (E.D.N.Y. Aug. 11, 2016) (quotation and citation omitted). "Where time entries are vague, duplicative, or otherwise inadequate, a court may make 'an across-the-board reduction or percentage cut, in the amount of hours.'" *Id.* (quoting *T.S. Haulers, Inc. v. Cardinale*, No. 9-CV-451 (SJF)(ARL), 2011 WL 344759, at *3 (E.D.N.Y. Jan. 31, 2011)). "Inadequate documentation" is another "ground[] for reduction of a fee award." *Bercosa Corp.*, 666 F. Supp. 2d at 299 (citation omitted).

1.    <u>Hourly Rate</u>

Plaintiff requests attorneys' fees for work done by Michael Taubenfeld ("Taubenfeld") and Maddie Howard ("Howard").  Taubenfeld was admitted to the New York Bar in 2008 and has since practiced labor and employment law, with a focus on wage-and-hour law.  (Taubenfeld Decl. ¶ 7.)  He is a member of the New York chapter of the National Employment Lawyers Association and a partner at Fisher Taubenfeld LLP.  (*Id.* ¶ 8.)  Taubenfeld billed at a rate of $495 per hour for his work on Plaintiff's case, but only requests fees of $400 an hour.  (*Id.*)

The Eastern District has recently awarded hourly rates ranging from $300 to $450 for partners in FLSA cases.  *Martinez v. New 168 Supermarket LLC*, 19-CV-4526 (CBA)(SMG), 2020 WL 5260579, at *8 (E.D.N.Y. Aug. 19, 2020) (collecting cases), *report and recommendation adopted by* 2020 WL 5259056 (Sept. 3, 2020).  I find that $400 per hour is a reasonable rate for an attorney with similar experience in a routine FLSA case.

Howard graduated from CUNY School of Law in the summer of 2022.  (Taubenfeld Decl. ¶ 9.)  She interned in the Labor Bureau of the New York Office of the Attorney General's in 2021 and for the Member Legal Services program at AFSCME District Council 37 in 2022.  (*Id.*)  She focused on labor and employment-related clinical work in law school.  (*Id.*)  Howard billed at a rate of $75 an hour.  (*Id.*)  I find that $75 per hour is a reasonable rate for an attorney with similar experience in a routine FLSA case.  *See Rudler v. Houslanger & Assocs., PLLC*, No. 18-CV-7068 (SJF)(AYS), 2020 WL 473619, at *12 (E.D.N.Y. Jan. 29, 2020) (stating that courts in this district typically award fees ranging from $100 to $200 for junior associates).

Accordingly, I find that the requested rates are reasonable.

2.    <u>Reasonableness of Time Billed</u>

Plaintiff requests attorneys' fees for 5.5 hours of Taubenfeld's work and 7.5 hours of Howard's work.  (Taubenfeld Decl. ¶¶ 7-9.)

"To determine whether the number of hours spent by Plaintiff's counsel was reasonable, the Court must 'use [its] experience with the case, as well as [its] experience with the practice of law, to assess the reasonableness of the hours spent ... in a given case.'" *Litkofsky v. P & L Acquisitions, LLC*, No. CV-15-5429 (DRH)(AKT), 2016 WL 7167955, at *10 (E.D.N.Y. Aug. 19, 2016), *R&R adopted*, No. CV 15-5429 (DRH)(AKT), 2016 WL 7168069 (E.D.N.Y. Dec. 8, 2016) (quoting *Fox. Indus., Inc. v. Gurovich*, No. 03-cv-5166, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005). Plaintiff submitted contemporaneous time sheets showing work performed in this case from February 1, 2022 to February 9, 2023. (Ex. 6 to Taubenfeld Decl., Dkt. 29-4.)

Because the hourly rates and number of hours billed are reasonable, I respectfully recommend that Plaintiff be awarded **$2762.50** in attorneys' fees.

### B.    Costs

Plaintiff requests an award of costs for $607.00. I take judicial notice of the filing fee of $402.00. *See Joe Hand Promotions, Inc. v. Bernal*, No. 18-CV-85 (ILG)(SJB), 2019 WL 885930, at *6 (E.D.N.Y. Feb. 22, 2019) (awarding plaintiff the $400 filing fee after taking judicial notice of it). Plaintiff submitted an invoice showing service of process costs totaling $205.00. The costs for the filing fee and service of process were reasonably expended and supported by invoices. (Ex. 7 to Taubenfeld Decl., Dkt. 29-5.)

Accordingly, I respectfully recommend that Plaintiff be awarded **$607.00** in costs.

## VII.    <u>Joint and Several Liability</u>

When multiple defendants are found to be a plaintiff's employer, "each [d]efendant is jointly and severally liable under the FLSA and NYLL for any damages awards made in [that] [p]laintiff['s] favor." *Fermin*, 93 F. Supp. 3d at 37; *see also Pineda v. Masonry Constr., Inc.*, 831 F. Supp. 2d 666, 685-86 (S.D.N.Y. 2011) (holding that plaintiff's allegations that the individual defendant "was an owner, partner, or manager" of the corporate defendant, "coupled with [d]efendants' default, suffice to . . .

impose joint and several liability on each [defendant] for their respective violations of the wage laws." (quotation and citation omitted)).

I, therefore, respectfully recommend that Defendants be held jointly and severally liable for their violations of the FLSA and NYLL.

## **CONCLUSION**

Based on the foregoing, I respectfully recommend that the Motion be granted and that damages be awarded under the NYLL as follows:

- $5,238.10 for unpaid minimum wage;

- $1,507.50 for unpaid overtime premium;

- $5,000 for failure to provide wage notices;

- $5,000 for failure to provide wage statements;

- $4,362.93 for misappropriation of tips damages;

- $11,108.53 in liquidated damages on unpaid wages;

- $71,221.83 in back pay damages on the retaliation claim, plus an additional $712.50 per week through the date of judgment;

- $20,000 in liquidated damages on the retaliation claim;

- $5,000 for emotional distress damages on the retaliation claim;

- $2762.50 in attorneys' fees; and

- $607.00 in costs.

I further recommend that prejudgment interest be awarded at a daily rate of $2.74 for Plaintiff's underpayments from August 23, 2020 through the date of judgment, and $17.56 for retaliation back pay from April 11, 2021 through the date of judgment.  In addition, post-judgment interest shall accrue thereafter until payment of the judgment amount, and a fifteen-percent increase in penalty if damages under the NYLL are not paid within ninety days of judgment or the expiration of time to appeal.

**SO ORDERED:**

_Peggy Kuo_
PEGGY KUO
United States Magistrate Judge

Dated:     September 27, 2023
           Brooklyn, New York